# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

—————

No. 04-1257

—————

United States of America,           \*

                                    \*

       Plaintiff - Appellee,       \*

                                    \*   Appeal from the United States

      v.                      \*   District Court for the

                                    \*   District of North Dakota.

Casey Scott Patten,              \*

                                    \*

       Defendant - Appellant.    \*

—————

Submitted: October 21, 2004
Filed: February 15, 2005 (corrected 2/22/05)

—————

Before LOKEN, Chief Judge, MAGILL and BENTON, Circuit Judges.

—————

LOKEN, Chief Judge.

It is a federal crime to use an instrumentality of interstate commerce to knowingly persuade or attempt to persuade a person under the age of eighteen to engage in "any sexual activity for which any person can be charged with a criminal offense." 18 U.S.C. § 2422(b). It is a crime in North Dakota, but not in Minnesota, for an adult to knowingly have sexual contact with a sixteen-year-old minor. In this case, a police officer in West Fargo, North Dakota, posing as a sixteen-year-old girl, engaged in explicit sexual conversations in an Internet chat-room with twenty-six-year-old Casey Scott Patten in nearby Moorhead, Minnesota. The two arranged to meet outside a West Fargo grocery store, where Patten was arrested. After a jury

convicted Patten of an attempt violation of § 2422(b), the district court[1] sentenced him to fifteen months in prison, the bottom of his guidelines sentencing range. Patten appeals the January 2004 judgment, arguing insufficiency of the evidence, prosecutorial misconduct, and instruction and sentencing errors. We affirm.

## I. Sufficiency of the Evidence

At trial, the government's evidence established that Patten initiated the first of two private online chats with "ndblondie2003," who identified herself as "Sarah," a sixteen-year-old Fargo girl. "Sarah" was in fact Officer Al Schmidt of the West Fargo Police Department, working in an undercover operation to identify and apprehend persons using the Internet to exploit North Dakota minors. During the first chat, Patten asked "Sarah" in graphic detail about her sexual preferences and then asked if she would like to "hook up." When "Sarah" said, "yeah your hot," Patten said she should call him, to establish "that you're an actual person . . . not someone just trying to get a guy in trouble." In the second chat, Patten asked, "Can you and I get drunk this week?" and the two discussed when they might get together.

The following day, a female West Fargo dispatcher pretending to be "Sarah" called Patten at the telephone number he provided. "Sarah" said she did not have a car. Patten said he would "come over and get you" in West Fargo. "Sarah" said she could walk to nearby stores, so they agreed to meet ten to fifteen minutes later outside a Sunmart grocery store. When the vehicle Patten described arrived in the store parking lot, the police arrested Patten for luring a minor by Internet. At the police station, he waived his Miranda rights, admitted engaging in the Internet chats with "Sarah," and said "he knew what he did was wrong." Officer Schmidt and the female

---

[1]The HONORABLE RALPH R. ERICKSON, United States District Judge for the District of North Dakota.

dispatcher testified at trial. The government introduced transcripts of the two Internet chats and the dispatcher's taped phone conversation with Patten.

On appeal, Patten argues that the two Internet chats and one phone call provide insufficient evidence (i) that he intended to persuade "Sarah" to engage in sexual activity, or (ii) that he took a substantial step in furtherance of that intent, which is required to prove an attempt violation. "Evidence is sufficient to sustain a conviction if, viewing the evidence in the light most favorable to the government, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." United States v. Ryan, 227 F.3d 1058, 1063 (8th Cir. 2000) (quotation omitted). We "will reverse only if the jury must have had a reasonable doubt concerning one of the essential elements of the crime." United States v. Sandifer, 188 F.3d 992, 995 (8th Cir. 1999). The element of intent "need not be proved directly and can be inferred from the facts and circumstances surrounding a defendant's actions." United States v. Flynn, 196 F.3d 927, 929 (8th Cir. 1999).

Like the district court, we have no difficulty concluding that the transcripts of the Internet chats and the telephone conversation are sufficient evidence to permit a reasonable jury to find that Patten intended to persuade "Sarah" to engage in sexual activity. But as previously noted, the 18 U.S.C. § 2422(b) offense is limited to conduct that persuades or attempts to persuade a minor to engage in sexual activity "for which any person can be charged with a criminal offense." The parties agree that "any person" in this case can only mean Patten himself. Before and during trial, they vigorously debated the significance of the difference between North Dakota and Minnesota law regarding sexual contacts between adults and minors. In Minnesota, consensual sexual contact between Patten and "Sarah" would have been, with some exceptions, lawful. See MINN. STAT. § 609.345, subd. 1(e)-(g). In North Dakota, on the other hand, even consensual sexual contact with sixteen-year-old "Sarah" would have been criminal. See N.D. CENT. CODE § 12.1-20-07(f).

The debate continues on appeal and impacts the sufficiency of the evidence issue. In our view, neither party's interpretation of § 2422(b) is entirely correct. We begin, quite naturally, with the district court's instructions to the jury. The critical instruction told the jury -- correctly, in our view -- that in order for the jury to find Patten guilty of violating § 2422(b):

> The United States must prove that the defendant intended to persuade or attempted to persuade a minor to engage in an unlawful act. . . . The defendant could only be criminally prosecuted for an unlawful sexual act under North Dakota law if the sexual activity occurred or was intended to occur within the borders of the state of North Dakota.

The government argues that the evidence in this regard was obviously sufficient because § 2422(b) is an interstate communication crime that was "complete" when Patten used the Internet in an attempt to persuade "Sarah" to engage in sexual activity that would be illegal in North Dakota, where she received the communication. But this formulation improperly broadens the plain meaning of the statute. To take an obvious example, Patten would not have violated § 2422(b) if his interstate communications had explicitly urged "Sarah" to come to Minnesota to engage in lawful sexual activity with him, even though "Sarah" received those communications in North Dakota. The statute only prohibits persuading a minor to engage in *illegal* sexual activity.

Patten argues that the government must prove he intended to engage in sexual activity with "Sarah" in North Dakota, an issue on which, in his view, there was no evidence whatsoever. As the district court's instruction accurately stated, the intent that violates § 2422(b) is the intent to persuade a minor to engage in illegal sexual activity. See United States v. Bailey, 228 F.3d 637, 639 (6th Cir. 2000) (§ 2422(b) criminalizes "the attempt to persuade, not the performance of the sexual acts themselves"), cert. denied, 532 U.S. 1009 (2001). Thus, Patten's conviction must be

affirmed if the evidence was sufficient to permit a reasonable jury to infer that he intended to persuade "Sarah" to engage in sexual activity in North Dakota. The jury could resolve that issue of fact without having to decide the additional question of where Patten in fact intended the sexual activity to occur.

Viewed in this light, we conclude the evidence was sufficient to support the jury's verdict. Patten and "Sarah" never discussed where they might engage in sexual activity. When "Sarah" said she did not have a car available, Patten said he would come to North Dakota to meet her there in ten to fifteen minutes. The jury could reasonably infer from this circumstance that Patten intended to persuade "Sarah" to engage in sexual activity in North Dakota.

## II. Prosecutorial Misconduct

Patten next argues that it was error to deny him a new trial because the prosecutor improperly and prejudicially stated during closing argument that Patten would not have intended to bring "Sarah" back to his home because "he knows it is illegal to have sexual contact with" her in Moorhead, Minnesota. Before Patten's closing argument, Patten objected to this statement on the grounds that it misstated Minnesota's age-of-consent law. The district court agreed and promptly instructed the jury, "Except under circumstances not present in this case, the age of consent to sexual contact in Minnesota is 16." Patten neither objected to the curative instruction nor moved for a mistrial. As the instruction clearly corrected the prosecutor's misstatement of Minnesota law, the court's response to Patten's objection was not an abuse of its broad discretion to control closing arguments. See United States v. Vazquez-Garcia, 340 F.3d 632, 641-642 (8th Cir. 2003) (standard of review), cert. denied, 124 S. Ct. 1186 (2004).

### III. A Jury Instruction Issue

Because "Sarah" was a fictitious victim, Patten was charged with attempting to violate § 2422(b). The district court properly instructed the jury that, to prove an attempt violation, the government must show that Patten intentionally carried out some act which was a "substantial step" toward persuading "Sarah" to engage in illegal sexual activity. Patten argues that the district court erred in failing to further instruct the jury that it could only look at Patten's electronic and telephonic communications to determine whether he undertook a substantial step. The district court declined to give the instruction, advising Patten's attorney that he was free to argue the point to the jury. We agree with the district court's resolution of this issue. There is clear authority for the government's position that Patten's act of driving to the arranged meeting place in West Fargo was relevant evidence of a substantial step. See United States v. Root, 296 F.3d 1222, 1228 (11th Cir. 2002), cert. denied, 537 U.S. 1176 (2003). Thus, the district court's decision to give an instruction that fairly and adequately stated the general elements of an attempt violation and then allow the parties to argue their respective positions to the jury was not an abuse of the court's "wide discretion in crafting appropriate jury instructions." United States v. Wright, 246 F.3d 1123, 1128 (8th Cir. 2001), cert. denied, 534 U.S. 919 (2001). We further conclude that the evidence was clearly sufficient to permit a reasonable jury to find that Patten took one or more substantial steps in an attempt to carry out his intent to persuade.

### IV. Sentencing Issues

Patten argues that the district court made two errors in applying the Guidelines that applied at the time of his sentencing. First, he contends that, despite putting the government to its proof at trial, he is entitled to a two-level downward adjustment because he "clearly demonstrate[d] acceptance of responsibility for his offense." U.S.S.G. § 3E1.1. We review a district court's denial of an acceptance of

responsibility adjustment for clear error.  See United States v. Field, 110 F.3d 587, 591 (8th Cir. 1997).  Only in "rare situations" will a defendant who puts the government to its proof at trial and denies factual elements of guilt warrant this adjustment. U.S.S.G. § 3E1.1 cmt. n.2.  Patten vigorously challenged the sufficiency of the government's evidence that he violated § 2422(b).  The district court did not clearly err in denying this adjustment.  See, e.g., United States v. Dyck, 334 F.3d 736, 744 (8th Cir. 2003).

Second, Patten argues that the district court erred in not granting him a downward departure based upon the aberrant nature of his criminal conduct.  See U.S.S.G. § 5K2.20 (p.s).  "We have jurisdiction to review a district court's decision not to depart only where the decision is based on the district court's legally erroneous determination that it *lacked* authority to consider a particular mitigating factor." Field, 110 F.3d at 590-91.  Patten argues the district court mistook its discretionary authority because, after reviewing the criteria suggested in § 5K2.20, the court stated "that the aberrant behavior policy statement is not available in this case."  We presume that a district court is aware of the scope of its authority to depart.  See United States v. Riza, 267 F.3d 757, 759 (8th Cir. 2001).  After reviewing the district court's careful consideration of this issue at the sentencing hearing, we conclude the court was fully aware of its departure authority.  Therefore, we may not review its decision to deny the requested departure.

The judgment of the district court is affirmed.

_____