# United States Court of Appeals
## For the Eighth Circuit

_____

No. 19-2524
_____

United States of America

*Plaintiff - Appellee*

v.

Carol Ann Davis

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Western District of Missouri - Kansas City

_____

Submitted: September 25, 2020
Filed: November 4, 2020
[Unpublished]

_____

Before COLLOTON, GRUENDER, and GRASZ, Circuit Judges.

_____

PER CURIAM.

Carol Davis ("Davis") appeals the district court's[1] denial of her motion for judgment of acquittal, arguing that as a matter of law she could not be found guilty of committing the crimes with which she was charged. We affirm.

_____

[1]The Honorable Brian C. Wimes, United States District Judge for the Western District of Missouri.

In 1999, Davis began receiving social security disability income for a back disorder. In 2000, she and her then-husband divorced. Davis initially was awarded custody of their son Matthew.

In 2003, Davis applied for social security auxiliary benefits on Matthew's behalf. As relevant here, auxiliary benefits are available to the child of an individual receiving social security disability benefits. These benefits, which "must be spent for the child's present needs or if not presently needed saved for the beneficiary's future needs," are disbursed to a "representative payee," someone whom the Social Security Administration ("SSA") designates to handle the funds for the child. About a month after Davis applied for these benefits, the SSA approved the application and made her the representative payee.

In 2007, after Matthew expressed a desire to live with his father (at that time, his father lived near Davis in Missouri), Davis and her ex-husband agreed to modify Matthew's custody arrangement. The Missouri circuit court overseeing the matter then entered a "Judgment of Modification" ("2007 Judgment") in accordance with the terms of their agreement. As relevant here, the 2007 Judgment provided that Davis "shall retain the Social Security Disability payments to the minor child as and for support while in her custody."

In 2012, Matthew moved with his father to Oklahoma, thereafter returning to Missouri only three or four times. During this period, Matthew received money from Davis "every once in a while" but did not receive the full amount of auxiliary benefits she was receiving on his behalf. Nevertheless, for the period of time following Matthew's move to Oklahoma, Davis reported to the SSA that she spent all of the auxiliary benefits on his behalf.

In 2014, Matthew received a letter from the SSA informing him that he had received too much in auxiliary benefits. Matthew then informed the SSA that he had not been receiving these benefits. Subsequently, his father wrote the SSA stating

that Matthew had "never received any benefits." After learning this information, the SSA began an investigation into Davis's potential misuse of Matthew's auxiliary benefits. During this investigation, Davis admitted to the SSA that she had been receiving Matthew's benefits, that she had spent all of what she had received, that she had not spent "very much" of it on Matthew, and that she understood this meant she had been overpaid. The SSA ultimately determined Davis owed $47,340 in misused auxiliary benefits. The matter then was referred for prosecution, and a federal grand jury indicted Davis on five counts of wire fraud, 18 U.S.C. § 1343, and one count of theft of public money, 18 U.S.C. § 641.

The case proceeded to trial. Davis moved for a judgment of acquittal at the close of the Government's case and renewed that motion at the close of her case. The district court denied the motion. The jury returned a guilty verdict on all counts. Davis again renewed her motion for judgment of acquittal, and the district court again denied it. It then sentenced her to four years' probation. Davis appeals, claiming the district court erred by denying her motion for judgment of acquittal.

"We review *de novo* the denial of a motion for judgment of acquittal." *United States v. Golding*, 972 F.3d 1002, 1005 (8th Cir. 2020). "We will uphold the conviction unless no reasonable jury could find the defendant guilty." *Id.* (internal quotation marks omitted).

Davis's only argument on appeal is that she was entitled to a judgment of acquittal based on a defense of legal impossibility. Legal impossibility refers to those situations in which "the defendant's actions, even if carried out, do not constitute a crime." *United States v. Helder*, 452 F.3d 751, 754 (8th Cir. 2006); *see also United States v. Frazier*, 560 F.2d 884, 888 (8th Cir. 1977). Simply put, Davis's argument is that the 2007 Judgment gave her the right to Matthew's auxiliary benefits. Both wire fraud and theft of public money require that the money in question belongs to someone else. *See United States v. Rehak*, 589 F.3d 965, 973-74 (8th Cir. 2009); *United States v. Slaughter*, 128 F.3d 623, 628 (8th Cir. 1997). Accordingly, whatever the evidence against her, she argues that it would be

insufficient as a matter of law to prove the crimes of wire fraud and theft of public money because, under the 2007 Judgment, the money in question was hers to do with as she willed.

Davis's argument fails on its own terms. The 2007 Judgment allowed Davis to retain Matthew's auxiliary benefits only "as and for [his] support." It did not give her a "rightful claim to the money," as she contends, but rather it specified that the money was to be spent on Matthew's behalf. Indeed, one of Davis's own witnesses at trial confirmed this understanding of the 2007 Judgment, testifying that Davis still "had to use [the auxiliary benefits] for the benefit of [Matthew]" and that the 2007 Judgment did not say anything about giving Davis the right to "use the [auxiliary] benefits for herself."

The 2007 Judgment did not give Davis the right to keep Matthew's auxiliary benefits. Rather, consistent with the purpose of the auxiliary benefits and her obligations as representative payee, the 2007 Judgment recognized that Davis had to spend or save the money on Matthew's behalf. Thus, her argument that the 2007 Judgment made it legally impossible for her to commit wire fraud or theft of public money by keeping the benefits for herself fails.[2]

Therefore, we affirm.

_____

---

[2]Because the 2007 Judgment did not purport to give Davis the right to keep Matthew's auxiliary benefits, we need not address whether, if it had, the SSA would be bound by that decision. *But see* 42 U.S.C. § 407(a) (prohibiting transfer or assignment of "[t]he right of any person to any future [social security] payment" and exempting such rights from "legal process").